UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SCOTT SMITH<br>Plaintiff, | )<br>)<br>) | Civil Action No. 22-10219 |
| V. | )<br>) | Leave to File Granted on 3/30/22 |
| APHEX BIOCLEANSE SYSTEMS, INC.,<br>DAVID R. OLUND, and<br>CHARLES RAGLAND<br>Defendants. | )<br>)<br>)<br>)<br>) | |

PLAINTIFF'S SUR-REPLY IN OPPOSITION TO
THE REPLY OF DEFENDANT, CHARLES RAGLAND

Plaintiff, Scott Smith ("Smith"), hereby sur-replies in opposition to the Reply filed by defendant, Charles Ragland ("Ragland") pertaining to his motion to dismiss for want of personal jurisdiction. As grounds therefore, Smith states the following:

OPERATIVE FACTS

***G.L. c. 223A, § 3(a) and Due Process Clause of the Fourteenth Amendment:***

1. Defendants' conduct occurred in the context of an employment relationship and three employment contracts (one written). Aff. Smith (¶¶ 1-2) Doc. No. 11-1 at 1; Employment Contract, Doc. No. 4-2 at 2.

2. The written employment contract between Aphex and Smith were negotiated, drafted, and signed, in part, in Massachusetts. Affidavit of Smith dated March 31, 2022 ("Aff. Smith (sur-reply)," ¶ 1.

3. The alleged breach of Smith's employment agreements occurred in Massachusetts and caused damages in Massachusetts via non-payment of Smith's wages and non-payment of taxes to the Commonwealth. Aff. Smith (sur-reply), ¶ 4; Aff. Ragland (¶ 7), Doc. No. 21-1 at 4.

1

4. Aphex recruited and retained a Massachusetts-based employee.

5. Aphex expected and intended for Smith to work out of his home in Massachusetts. Aff. Smith (¶ 11), Doc. No. 11-1 at 2; Aff. Smith (sur-reply), ¶¶ 4, 8-9; Affidavit of David J. Weaver dated, March 30, 2022 ("Aff. Weaver"), ¶¶ 3-9, 12, 14-15.

6. Smith was employed as a high-level agent and executive of Aphex, i.e., as officer and director of Aphex. Aff. Smith (¶¶ 1-2), Doc. No. 11-1 at 1.

7. Aphex expected, desired, directed, intended, and financially supported Smith to transact business in Massachusetts on behalf of Aphex. Aff. Smith (¶¶ 11-19), Doc. No. 11-1 at 2; Aff. Smith (sur-reply), ¶¶ 5, 7, 9-13; Aff. Weaver, ¶¶ 10-13.

8. Aphex transacted business in Massachusetts. Aff. Smith (¶¶ 12-14, 17), Doc. No. 11-1 at 2-3; Aff. Smith (sur-reply), ¶¶ 6-7, 9, 11-13; Aff. Weaver, ¶¶ 10-13.

9. Aphex provided Smith with product inventory, supplies and equipment to work on and operate Aphex business out of his home in Massachusetts, and to transact business in Massachusetts on behalf of Aphex, by authorizing Smith to purchase and use the same and to submit same for reimbursement. Aff. Smith (¶¶ 13, 18-19), Doc. No. 11-1 at 2-3; Aff. Smith (sur-reply), ¶¶ 5-6, 9-13; Aff. Weaver, ¶ 13.

***G.L. c. 223A, § 3(e) and Fourteenth Amendment:***

10. Aphex used real property in Massachusetts (i.e., Smith's home and his garage), as its packing and storage facility for product inventory that was sent and received, internally, between Aphex facilities in MA, NY, and FL, and as a base from which to mail product samples to potential customers of Aphex. Aff. Smith (sur-reply), ¶¶ 5, 9-13.

***G.L. c. 223A, § 3(c) and (d):***

11.  Aphex, Olund, and Ragland caused tortious injury by retaliatory filings in the U.S. District Court of Massachusetts for no other purpose than to penalize Smith for petitioning this Court for redress under the Massachusetts Wage Act. *See,* Olund's Motion to Dismiss (Ex. B), Doc. No. 8-4 at 2; Ragland's Motion to Dismiss (Ex. B), Doc. No. 10-2 at 2.

12.  Aphex caused tortious injury in Massachusetts by retaliatory acts outside of Massachusetts, such as issuing false and negative press releases about Smith, conducting special board meetings to terminate Smith from the board of directors, removing Smith from the board of directors, and bad-mouthing Smith to other shareholders and investors of Aphex. Aff. Smith (¶ 9), Doc. No. 11-1 at 2; First Amended Complaint, Doc. No. 4 at 6-8; Aff. Smith (sur-reply), ¶¶ 14-16.

## REPLY ARGUMENT

### A.    *Prima Facie* Showing of Personal Jurisdiction.

"The most commonly used method of determining a motion to dismiss for want of personal jurisdiction is for the district court to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction. To defeat a motion to dismiss when the court uses this method the plaintiff must make the showing as to every fact required to satisfy "both the forum's long-arm statute and the due process clause of the Constitution." Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992), *quoting,* U.S.S. Yachts, Inc. v. Ocean Yachts, Inc., 894 F.2d 9, 11 (1st Cir. 1990). Here, Ragland's brief ignores the prima facie standard and presents the frivolous, if not obscure, defense that Smith was somehow attempting to amend his complaint by affidavit, and that he

was required to allege sufficient facts in his complaint to show personal jurisdiction. *See,* Ragland's Reply, Doc. No. 21 at 9. Aside from the fact that Smith's complaint alleged sufficient facts to support personal jurisdiction over Aphex and, via the Massachusetts Wage Act, over its president and treasurer,[1] Smith is not limited to the four corners of his complaint. Ibid.

In the context of a breach of contract, courts take a practical approach when evaluating "minimum contacts" that includes performance and the parties' actual course of conduct.

> The Court long ago rejected the notion that personal jurisdiction might turn on "mechanical" tests, *International Shoe Co.* v. *Washington, supra*, at 319, or on "conceptualistic . . . theories of the place of contracting or of performance," *Hoopeston Canning Co.* v. *Cullen*, 318 U.S., at 316. Instead, we have emphasized the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Id.*, at 316-317. It is these factors -- prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing -- that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478-479 (1985). Ragland's reply argues against Aphex having ""minimal" contacts" in Massachusetts. Doc. No. 21 (passim). But the stubborn facts are that the written employment contract was negotiated, drafted, and signed, at least in part, in Massachusetts (Operative Facts ("OF") ¶ 2), breach of the agreement occurred in Massachusetts and caused damage in Massachusetts (OF ¶ 3), Aphex recruited a Massachusetts-based employee to work primarily out of his home in Massachusetts (OF ¶¶ 4-5), Aphex maintained a home office (residential) in Massachusetts where Aphex officers and one director, in fact, regularly worked in Massachusetts, i.e., Smith at his home, as a member of Aphex's board of directors, its CSO and its CMO (OF ¶¶ 5-6), Aphex transacted business in

---

[1] "the president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation within the meaning of this section." M.G.L. c. 149, s. 148. Thus, as the president of Aphex, Olund is treated as the employer for all purposes, including personal jurisdiction.

Massachusetts (OF ¶¶ 7-9), and used real property in Massachusetts to store product inventory, to transfer inventory between Aphex facilities, and to pack and ship product samples to potential customers and business partners of Aphex (OF ¶ 10). The suggestion that a supervisor of Smith was required to be in-state (Doc. No. 13 at 2-3) is without merit where, here, Smith was a high-level executive.[2] OF ¶ 6. Ragland overlooks the fact that Smith was a high-level agent of Aphex such that his acts were the acts of Aphex for purposes of establishing personal jurisdiction (purposeful availment) over Aphex.[3] The case of Stanton v. Lighthouse Fin. Servs., lends some context to this dynamic where this Court upheld a Wage Act violation claim by a company president who brought a suit for unpaid wages against defendants, the startup he founded, and its CEO. 621 F. Supp. 2d 5, 7 (D. Mass. 2009). Ragland (and Flynn) play semantics while misapprehending a meaningful distinction between an employer who "requires" and one who "understands" the location where an employee will be working and soliciting business. The fact of notice is all that is required to place an employer on fair notice that it may be hailed into court in that jurisdiction. World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Here, the operative facts satisfy every adjective to describe that Aphex purposefully availed itself of the Commonwealth, and neither required Smith to work elsewhere nor could it have afforded to pay for such an accommodation. OF ¶¶ 5, 9-10. Ragland misrepresents and conceals evidence from this Court, knowing full well that all Aphex employees work from home. Id. Exceptions are where a few, work-from-home employees also go to an office location in upstate New York or a

---

[2] M.G.L. c. 149, § 148, is not limited to low-level employees. Stanton v. Lighthouse Fin. Servs., 621 F. Supp. 2d 5, 2009 U.S. Dist. LEXIS 34813 (D. Mass. 2009); Okerman v. VA Software Corp., 69 Mass. App. Ct. 771, 871 (2007).

[3] "A court may exercise personal jurisdiction over a person, who acts directly **or by an agent**, as to a cause of action in law or equity arising from the person's . . . transacting any business in this commonwealth." M.G.L. c. 223A, § 3(a).

factory in Florida. Id. Specifically, Olund, Ragland, and Aphex CEO, Thomas Fitzgerald, work out of their homes. Id.

Ragland continues to argue the merits of Smith's claims rather than the issue of jurisdiction. The assertion that an employment contract can be void *ab initio* remains frivolous and is irrelevant to the question of jurisdiction. Smith need only satisfy the definition of an "employee" under the Wage Act, which does not even require there to be a written agreement. M.G.L. c. 149, s. 148.

B.   **Ragland's False Affidavit Obfuscates Material Facts to Obtain a Judgment.**

An example of a fraud upon the court has been found "where a litigant fabricated e-mail and submitted false affidavits then maintained an "additional charade, attempting to hide the fabrication,"" Household Fin. Corp. II v. Matthews, 2013 Mass. App. Div. LEXIS 36, *8, *quoting*, Munshani v. Signal Lake Venture Fund II, LP, 60 Mass. App. Ct. 714, 719 (2004).

Here, Ragland did not falsify a document, but he misrepresented to this Court that the written employment agreement with Smith pertained to the chief marketing officer ("CMO") position. *See,* Aff. Ragland (¶ 1), Doc. No. 21-1 at 2. He emphasized his special, first-hand knowledge, as a board member and CFO, of "the facts and circumstances surrounding the decision of David Weaver, then the Company's CEO to consider hiring Scott Smith as the Company's Chief Marketing Officer (CMO)." Id. Building upon the obfuscation of this false premise, Ragland goes on to extol Aphex's worldwide marketing plans and how its aspirations of global domination, involving international travel, would necessarily contradict the notion that Smith was expected to work from his home in Massachusetts.

> "The main emphasis, as the Company saw it, for the CMO is that it would be a Chief Marketing Officer position where Aphex would be able to expand its international and marketing efforts throughout the world . . . as well as throughout various and sundry locations in the United States. The Company had no plans to forgo these marketing opportunities and replace them with concentrated marketing in Massachusetts.

Ragland's Reply, Doc. No. 21 at 2.

> "The contemplated functions of the CMO were never intended to involve Massachusetts since the CMO position required implementation of the Company's overall marketing plan which encompassed the concept of broadening the Company's marketing base throughout the United States, and expanding the Company's markets worldwide to include, Europe, Asia, and the Middle East. It would obviously never be expected that this role could be accomplished solely or principally from Massachusetts, and this was never an understanding."

Aff. Ragland (¶ 4), Doc. No. 21-1 at 3.

Back to reality, Smith's written employment agreement had nothing to do with Aphex's marketing plans or the CMO position. FAC (Ex. 2), Doc. No. 4-2. In truth, David Weaver, as CEO of Aphex, never had any discussions involving Ragland, Olund, or anyone else about hiring Smith as Aphex's CMO, and never considered Smith for the CMO position. *See,* Aff. Weaver, ¶¶ 16-17. Aphex couldn't even afford to pay Smith's expenses within Massachusetts and the United States, let alone, fund a prolonged campaign of international travel. FAC (pars. 33-40), Doc. No. 4 at 3-4; Aff. Weaver, ¶ 14. In fact, Aphex had no travel requirements at all for Smith. Aff. Weaver, ¶ 17. Regardless of whether the obfuscation and misrepresentation of material facts by Ragland's affidavit rises to the level of a fraud upon the court, it nevertheless, constitutes a false sworn statement that frustrates the administration of justice.

**1. False Swearing and Fraudulent Misrepresentations to the Court.**

Ragland employs Flynn folly to suggest that the written employment agreement somehow called for Smith to work in New York. *See,* Ragland's Reply, Doc. No. 21 at 3. The folly of this argument is that it is contradicted by Olund's argument that Smith was required to work in Nevada so that he could be supervised by a Nevada corporation. "The implication is that he will be "very close to the flagpole"—a flagpole not located in

7

Massachusetts." Olund's Reply, Doc. No. 13 at 1. Which, of course, was equally foolish and contradicted by Olund's own affidavit, wherein he states the intention was for Smith to work in the "Middle East" in one breath, and that Aphex "did not intend or require the CMO to work from any location" in another. Aff. Olund (Ex. A), Doc. No. 13 at 2-3. Worse yet, Ragland contradicts his own argument in Paragraph 4 of his affidavit, swearing under oath that because Smith was Aphex's international traveler for its worldwide marketing "[i]t would obviously never be expected that this role could be accomplished solely or principally from [within the United States]." *See,* Aff. Ragland, Doc. No. 21-1 at 3.

      Notably absent from Ragland's reply are any communications from the employer, Aphex, objecting to Smith working out of his home in Massachusetts, reprimanding Smith for failing to show up for work at some out-of-state location, directing Smith to travel to the Middle East (Smith never traveled to the Middle East) or abroad (Smith never traveled abroad for Aphex), and Ragland fails to produce any receipts for international travel expenses (plane tickets, rental cars, lodging, etc.). To the contrary, evidence shows that Aphex could not even afford to pay Smith's expenses incurred within Massachusetts and within the United States, let alone, to be able to fund international travel. OF ¶¶ 5, 9-10. Nor does his Reply claim or show where Smith was ever notified that Aphex is not licensed to do business in Massachusetts, or instructing Smith to refrain from doing business in Massachusetts or obtaining contracts with Massachusetts customers. To the contrary, all the defendants, Aphex, Olund, and Ragland, directed, assisted, supported, and applauded Smith for doing business in Massachusetts. Smith was told that Aphex tried for a decade but failed to obtain a contract with a municipality, while Smith accomplished this amazing

feat after only a few months on the job, and Ragland was on most of the emails pertaining to Smith's work on Martha's Vineyard. Aff. Smith (¶¶ 13, 19), Doc. No. 11-1, at 2-3.

Therefore, Ragland was aware that Aphex expected, intended, supported and directed Smith to work, transact, and conduct business within Massachusetts, and was specifically aware of such efforts in Tisbury, MA.

C.  **Ragland/Flynn Misapprehend Prevailing Authority on Personal Jurisdiction.**

Ragland and Flynn, waste time with the folly of analyzing cases cited by Smith against propositions that Smith never made. For example, Smith cited *Haddad v. Taylor*, for the simple proposition that business conducted in Massachusetts need not result in a completed or successful transaction. 32 Mass. App. Ct. 332 (1996). Nevertheless, Smith successfully completed a sales transaction with the Town of Tisbury, MA. In another effort, Flynn and Ragland overreach to distinguish where the employer in, *Cossart v. United Excel Corp.*, had agreed to ""buy equipment [the employee] needed" to work from Wayland, and would provide "a printer, a cell phone and video conferencing equipment." 804 F.3d 13 (1st Cir. Mass. 2015). Notably, buying a printer is not a requirement for jurisdiction and the provision of equipment, in general, is but one factor among many. While the need to provide such office technologies as video conferencing equipment may have been greater in 2015, by 2021, it was common for individuals—including children—to have access to everything needed (even on a smart phone) to operate an office, music studio, video studio, etc., including conferencing with such apps as Zoom, and Smith, on his existing computer and phone, was no exception. It is axiomatic that the world is operating more digitally at a rapid pace, and soon, the bulk of human interactions will likely occur virtually. Updating the *Cossart* facts to present times, Aphex replaced the provision of such office equipment with the terms of Smith's contract calling for reimbursement of

9

Case 1:22-cv-10219-IT   Document 31   Filed 04/01/22   Page 10 of 14

necessary expenses that Smith otherwise would not have incurred but for his work on behalf of Aphex (Doc. No. 4-2 at 2) and these expenses included Aphex's business and activities within Massachusetts. OF ¶¶ 5, 7, 9-10; Aff. Smith (Ex. 5), Doc. No. 11-1 at 15. Ragland fares no better in his misapplication of *Walden v. Fiore,* where he applies, too literally, facts that concerned an intentional tortfeasor. Walden v. Fiore, 571 U.S. 277, 286 (2014). Smith's primary claims are not tort claims. Flynn and Ragland champion *Walden* out of context because the Supreme Court's analysis had nothing to do with employment law or contract breach. Even in the context of tort actions, the Supreme Court has found *Walden's* facts inapplicable.

> "But Walden has precious little to do with the cases before us. In Walden, only the plaintiffs had any contacts with the State of Nevada; the defendant-officer had never taken any act to "form[ ] a contact" of his own. 571 U. S., at 290, 134 S. Ct. 1115, 188 L. Ed. 2d 12. The officer had "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." Id., at 289, 134 S. Ct. 1115, 188 L. Ed. 2d 12. So to use the language of our doctrinal test: He had not "purposefully avail[ed himself] of the privilege of conducting activities" in the forum State. Hanson, 357 U. S., at 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283.

Ford Motor Co. v. Montana Eighth Judicial Dist. Court, 141 S. Ct. 1017, 1031 (2021). *See, also,* D'Allessandro v. Lennar Hingham Holdings, LLC, Civil Action No. 17-cv-12567-IT, 2018 U.S. Dist. LEXIS 116196, at *12 (D. Mass. July 12, 2018)("the instant case does not fall under the holding of Walden").

Unlike in other contexts, in the employment arena and in contract actions, an employer's relationship and activities with the plaintiff are, indeed, relevant factors to personal jurisdiction. *See, e.g.,* Cossart at 18 (1st Cir. 2015)(employer "recruited and hired [] a Massachusetts resident" and "retained him as a Massachusetts-based employee"); Telford v. Iron World Mfg., LLC, 680 F. Supp. 2d 337, 339 (D. Mass. 2010)(employment contemplated that plaintiff would work three days a week at his home in Massachusetts and two days a week at defendant's offices in Maryland); Barthel v. One Community, Inc., 233 F. Supp. 2d 125, 128 (D. Mass. 2002)("Both

10

defendants' role in the operations [of the employer] satisfy the "but for" analysis: the alleged decision by defendants to deny [employee] wages was "made possible by, or lies in the wake of, the transaction of business in the forum state."'"); Donaldson v. Shapemix Music, LLC, 31 Mass. L. Rep. 580 (2013)(alleged wrongdoing is failing to pay wages and misrepresenting prospects of employer's finances in order to induce the plaintiffs' labor, and plaintiffs alleged that employer conducted business in Massachusetts); Levesque v. Schroder Inv. Mgt. N. Am., Inc., 368 F. Supp. 3d 302, 309 (D. Mass. 2019)(plaintiff "alleges multiple violations of the Massachusetts Wage Act arising out of a contract negotiated and signed, at least in part, in Massachusetts.").

Smith's case concerns employment, Aphex's conduct triggered the police power of Massachusetts by violating the Wage Act, and breached multiple employment agreements that had been negotiated, drafted and signed, at least in part, in Massachusetts. OF ¶¶ 2. As Ragland, himself, admits, "the suit related conduct took place with Smith wherever he was located . . ." Aff. Ragland (¶ 7), Doc. No. 21-1 at 4. While Ragland goes on to falsely swear that Smith was "(almost always not in Massachusetts)," the affidavits of Smith and Weaver state the opposite and are in harmony with the practical reality of Smith working from home the same as all other Aphex employees, and in Smith's case, to operate Aphex's packing, shipping and storage facility in Massachusetts. OF ¶¶ 5, 9-10.

D. **Personal Jurisdiction via Long-Arm and Minimum Contacts**

Aphex, Olund and Ragland are subject to personal jurisdiction pursuant to G.L. c. 223A, § 3(c) for having committed tortious conduct within Massachusetts. OF ¶ 11. Independent of all prior events, this Court obtained personal jurisdiction over defendants, Olund and Ragland, when they willingly and purposefully used this Massachusetts forum as a platform for their retaliatory conduct against Smith, in violation of Section 148A of the Wage Act, by filing a defamatory

article about Smith as an exhibit to their motions to dismiss. OF ¶ 11. (Doc. No. 8-4 at 2; Doc. No. 10-2 at 2). Here, they violated Massachusetts law, within Massachusetts, and used this Court to commit both civil violations and a prima facie crime. See, M.G.L. c. 149, §§ 27C, 148A.[4] To the extent needed to establish personal jurisdiction, this Court should grant leave of Smith to amend his complaint to include these latest transgressions.

Aphex, Olund and Ragland are similarly subject to personal jurisdiction pursuant to G.L. c. 223A, § 3(d) for having caused tortious harm in Massachusetts by acts committed outside of Massachusetts. OF ¶ 12.

In sum, defendants conceal, misrepresent, and misapprehend the operative facts of this case. Aphex knew and intended for Smith to work in Massachusetts by virtue of employing a Massachusetts resident and there being no other location provided to work, and no other information, direction, or evidence that Smith was to work anywhere else. OF ¶¶ 4-5. Aphex contemplated, encouraged, supported, and expected Smith to conduct business in Massachusetts on behalf of Aphex. OF ¶¶ 7-10. The use of Smith's home and garage as Aphex's packing, shipping and storage facilities in Massachusetts further satisfies G.L. c. 223A, § 3(e) of the Massachusetts long-arm statute. OF ¶10. In addition to communications Smith had with Aphex's highest level executives, Smith himself, as an agent of the employer, was an officer and director of Aphex engaging in such work. OF ¶ 6. Contrary to the false affidavits of Olund and Ragland, Aphex knowingly and purposefully availed itself of the Commonwealth's commerce and services, and treated

---

[4] The Massachusetts Wage Act provides criminal and civil remedies for violations (M.G.L. c. 149, § 148A); G. L. c. 149, § 27C (authorizing various penalties, including fines, imprisonment, and civil penalties). Patel v. 7-Eleven, Inc.; DP Milk St. Inc., No. SJC-13166, 2022 Mass. LEXIS 146, at *8.

itself as a Massachusetts employer, including, without limitation, by paying MAPFL and MAPML taxes[5] on those portions of Smith's wages that were paid. OF ¶ 5; Aff. Smith (sur-reply), ¶ 17.

WHEREFORE, the plaintiff, Scott Smith, prays this Court to deny the defendant, Ragland's, motion to dismiss; and to the extent necessary to establish personal jurisdiction, grant leave for Smith to amend his complaint to include recent violations committed in this Court by his Ex. B filing (Doc. No. 10-2 at 2) and to fashion such further orders as justice warrants.

Date: April 1, 2022

Respectfully submitted,
Scott Smith, plaintiff
By his attorney,
/s/Brian J. Wasser
Brian J. Wasser, BBO #633621
REALTYESQUIRE, PC
P.O. Box 151
W. Hyannisport, MA 02672
(508) 862-9999
lawclaims@msn.com

---

[5] MAPFL is Massachusetts Paid Family Leave. MAPML is Massachusetts Paid Medical Leave.

13

<div style="text-align:center;">Certificate of Service</div>

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non registered participants on April 2, 2022.