UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SCOTT SMITH<br>Plaintiff, | )<br>)<br>) | Civil Action No. 22-10219 |
| V. | )<br>) | |
| APHEX BIOCLEANSE SYSTEMS, INC.,<br>DAVID R. OLUND, and<br>CHARLES RAGLAND<br>Defendants. | )<br>)<br>)<br>) | |

**STATEMENT OF FACTS IN SUPPORT OF DAMAGES**

**E**MPLOYMENT

1.      On June 1, 2021, Smith was employed by Aphex BioCleanse Systems, Inc., (hereinafter, "Aphex") as Chief Sustainability Officer ("CSO") pursuant to a written agreement, dated June 1, 2021 ("CSO Employment Agreement").[1] See, Doc. No. 68-2 (CSO Employment Agreement). See also, Doc. No. 68-31, p.2 (Affidavit of Smith, dated August 9, 2022 ("1st Aff. Smith") ¶1).

2.      On October 1, 2021, Smith was further employed by Aphex as its Chief Marketing Officer ("CMO"), with a verbal promise by Aphex's president, Olund, that Smith would receive a salary appropriate for such a position (hereinafter, the "CMO Employment Agreement"). Doc. No. 68-31, p.2 (1st Aff. Smith ¶4).

3.      On October 1, 2021, Smith was further employed by Aphex as a member of its board of directors (hereinafter, the "BOD Employment Agreement"). Id. (1st Aff. Smith ¶5).

4.      On October 13, 2021, Aphex issued a press release announcing that:

> "Scott Smith, in addition to his existing role as Chief Sustainability Officer, will now also serve as Aphex's Chief Marketing Officer and has been elected to become a member of the Board of Directors."

---

[1] Compensation terms included an annual salary of $144,000, a family health insurance plan, and four (4) weeks paid vacation per year.

1

Doc. No. 68-4, p. 3;[2] Doc. No. 68-31, p. 2 (1st Aff. Smith ¶7).

5.  Since June 1, 2021, Smith had been employed and performed work as the CSO of Aphex. Doc. No. 68-31 p. 3 (1st Aff. Smith ¶8).

6.  Since October 1, 2021, Smith had been employed and performed work as the CMO and as a Director of Aphex. Id. (1st Aff. Smith ¶9).

### NON-PAYMENT

7.  Since June 1, 2021, the only compensation Smith received from Aphex was $54,000 in gross pay for seven (7) months of service as CSO in 2021. Doc. No. 68-5, p. 2 (W-2 for 2021).

8.  Smith did not receive his full salary due in 2021 and received no compensation for his work in 2022. Doc. No. 68-31, p. 3 (1st Aff. Smith ¶10).

9.  According to paragraph 3 of the CSO Employment Agreement, Smith should have received approximately $84,000 in gross pay for his seven (7) months of service as CSO in 2021. Doc. No. 68-2.

10. Since June 1, 2021, Aphex failed to provide Smith with health insurance for his CSO position. Doc. No. 68-31, p. 3 (1st Aff. Smith ¶11).

11. In an email dated December 20, 2021, from Aphex's treasurer, Charles Ragland ("Ragland"), Ragland refers to the payments made to keep health insurance benefits for Aphex employees active, and same is listed as a line item on the enclosed payroll spreadsheet. Doc. No. 68-10 (Aphex email dated December 20, 2021 with attached payroll spreadsheet).

12. Since October 1, 2021, Aphex failed to pay any compensation due Smith for his earned salary as CMO. Doc. No. 68-31, p. 3 (1st Aff. Smith ¶12).

### COMPLAINTS OF NON-PAYMENT

---

[2] See, https://finance.yahoo.com/news/aphex-biocleanse-systems-announces-changes-130000070.html?.tsrc=rss

13.     In or about mid-August or early September of 2021, Smith had begun giving notices, both verbally and in writing, and lodged numerous complaints to Aphex, Olund, and Ragland about not being paid his wages. Doc. No. 68-31, p. 3 (1st Aff. Smith ¶13).

14.     Following such complaints by Smith, the defendants offered a salary deferment whereby, in exchange for Smith agreeing not to be paid for four months (August-November 2021), Aphex would, at the end of the four-month period, pay the full wages owed, plus a bonus of 25% of the deferred wages. Id. (1st Aff. Smith ¶14).

15.     By email dated September 7, 2021, Smith declined the offer to defer his wages and requested to be paid his past due earned wages "as soon as reasonably possible." Doc. No. 68-6. See also, Doc. No. 68-31, p. 3 (1st Aff. Smith ¶15).

16.     From November 2021 to January 2022, Smith made numerous complaints to Aphex concerning the non-payment of his salary and made demands for same. Doc. Nos. 68-7, 68-8, 68-9, and 68-10. See also, Doc. No. 68-31, p. 3-4 (1st Aff. Smith ¶¶16-19).

17.     On or about January 5, 2022, and November 2, 2024, Smith filed a complaint with the Massachusetts Attorney General's Office ("AGO"), alleging Wage Act violations by Aphex for non-payment and retaliation. Doc. No. 4-1; Doc. No. 103-1, respectively. By letter dated, January 10, 2022 and November 4, 2024, the AGO responded with written authorization for Smith to pursue a private right of action. Doc. No. 4-1; Doc. No. 103-2. See also, Doc. No. 68-31, p. 4 (1st Aff. Smith ¶20).

18.     On February 10, 2022, the original complaint in this action was filed. Doc. No. 1.

**RETALIATION**

19.     Previously, on December 20, 2021, in the midst of Smith's complaints concerning his unpaid wages, Aphex, via its treasurer, Ragland, had sent him an email with a spreadsheet showing funds in excess of $118,000 from which wages were paid to numerous employees,

3

excluding Smith, notwithstanding a remaining surplus in excess of $7,000. Doc. No. 68-10. Meanwhile, Aphex's president, Olund, made sure that he received a payroll payment for himself. Id. See also, Doc. No. 68-31, p. 4 (1st Aff. Smith ¶22).

20.     Olund and Ragland began conspiring to penalize Smith and began investigating Smith, in part, by enlisting Chairman Fitzgerald to demand information from Smith about his other company and his IP, under the pretext of due diligence, despite the fact that due diligence on the previously transferred patent had already been completed, and that, by written email dated December 23, 2021, Smith had declined to sell any of his other patents to Aphex given its failure to pay his wages. Id. (1st Aff. Smith ¶23).

21.     On January 11, 2022, in response to a January 8, 2022 email from Chairman Fitzgerald concocting excuses for Aphex to be investigating Smith, his other IP, and his other company, Smith, through counsel, sent an email to Aphex, explaining that they would not cooperate with their investigation of Smith, stating, in part:

> "We have more pressing issues of material breach by Aphex on the existing IP agreement, and Scott's calls for performance by Aphex on his employment agreement have largely fallen on deaf ears. Please be cognizant of the fact that Scott is working three jobs (3 distinct positions) at Aphex."

Doc. No. 68-12. See also, Doc. No. 68-31, p. 4 (1st Aff. Smith ¶24).

22.     On January 15, 2022, Aphex's general counsel, Flynn, had his paralegal send a legal opinion to Smith that his CMO Employment Agreement was "null and void ab initio, and totally unenforceable." Doc. No. 68-13. See also, Doc. No. 68-31, p. 4 (1st Aff. Smith ¶25).

23.     On January 16, 2022, Smith, through counsel, responded to Flynn's email of January 15, 2022, notifying Aphex, among other things, about Smith's complaint to the Massachusetts Attorney General's Office ("AGO") concerning Aphex's non-payment of wages, in addition to

direct complaints to Aphex, and that retaliation for same is illegal. Doc. No. 68-14. See also, Doc. No. 68-31, p. 4 (1st Aff. Smith ¶26).

24.   Following complaints by Smith to Aphex and to the AGO, Olund and Ragland continued to conspire with Chairman Fitzgerald, Senior V.P. Investor Relations, Anthony Marotti, and Flynn, for ways to penalize Smith and apply pressure or use leverage against Smith, including, without limitation, a campaign to defame and discredit Smith in the eyes of other executives and key employees of Aphex, Aphex business partners, and Aphex shareholders. Doc. No. 68-31, p. 5 (1st Aff. Smith ¶27).

25.   Retaliation further included the refusal to take or return Smith's calls and a cessation of any communications from or with Chairman Fitzgerald, the contact person Smith had been instructed to report to as part of his employment communication protocols. Id. (1st Aff. Smith ¶28).

26.   On February 7, 2022, Flynn sent an email to Smith, this time, claiming that "management" determined that his CSO Employment Agreement was "void ab initio" and further adding that "there exists no valid" CSO or CMO employment contract between Aphex and Smith. Doc. No. 68-15. See also, Doc. No. 68-31, p. 5 (1st Aff. Smith ¶29).

27.   On February 18, 2022, Aphex issued a press release, stating that Smith was being suspended as Director because:

> **"on February 10, 2022, Board Member Scott Smith filed a legal action in the U.S. District Court for Massachusetts against the Company and two of its Directors."**

Doc. No. 68-16. See also, Doc. No. 68-31, p. 5 (1st Aff. Smith ¶30).

28.   On February 27, 2022, Aphex, via Olund, emailed a notice of a special board meeting ("Notice of Special Board Meeting") to terminate Smith for having filed the present lawsuit for

5

unpaid wages under the Wage Act. Doc. No. 68-17. See also, Doc. No. 68-31, p. 5 (1st Aff. Smith ¶32).

29.     On March 4, 2022, Aphex issued a press release announcing its board of directors had voted to terminate Smith as Director for having filed the present lawsuit seeking payment of his wages. Doc. No. 68-18. See also, Doc. No. 68-31, p. 5 (1st Aff. Smith ¶35).

30.     In April 2022, Aphex disparaged Smith to employees, shareholders and investors by falsely accusing Smith of civil and criminal violations of SEC Rule 10b-5 (17 C.F.R. 240.10b-5), which amounted to securities fraud and insider trading, and the use of fraud or deceit in connection with the purchase or sale of a security. Aphex further asserted it was investigating Smith for such violations and that it would report its findings to the FBI and the SEC. *See, e.g.,* Doc. No. 68-19. See also, Doc. No. 68-31, p. 6 (1st Aff. Smith ¶37).

31.     Retaliation further included ongoing disparagement against Smith, false accusations that Smith lied about owning IP that Smith, in fact, owned (R.A. Ex. 17 (Press Release 3/4/22)), that Smith engaged in insider trading (¶ 30, *supra.*), that Smith engaged in unauthorized communications with shareholders (Doc. No. 68-18), that Smith breached his fiduciary duties as Director (Doc. No. 68-16 (Press Release 2/18/22)), that Smith engaged in criminal conduct (¶ 30, *supra.*), threats to continue investigating Smith and to bring criminal charges against him (Id.), and efforts to scare others away from doing business or working with Smith including threats to target anyone who communicated or cooperated with Smith (Doc. No. 68-18). See also, Doc. No. 68-31, p. 6  (1st Aff. Smith ¶38).

32.     On March 3, 2022, Smith was terminated from the board of directors for having sued Aphex for unpaid wages under the Wage Act. Doc. No. 68-31, pp. 6-7 (1st Aff. Smith ¶¶34, 43).

33.     On or about May 16, 2022, Aphex filed a suggestion of Bankruptcy. Doc. No. 39.

|  |  |
|---|---|
| Date:   March 2, 2025 | Respectfully submitted,<br>Scott Smith, plaintiff<br>By his attorney,<br>/s/Brian J. Wasser_____<br>Brian J. Wasser, BBO #633621<br>RealtyEsquire, PC<br>P.O. Box 151<br>W. Hyannisport, MA 02672<br>(508) 862-9999<br>lawclaims@msn.com |