UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT SMITH )<br>Plaintiff, )<br> )<br>V. )<br> )<br>APHEX BIOCLEANSE SYSTEMS, INC., )<br>DAVID R. OLUND, and )<br>CHARLES RAGLAND )<br>Defendants. ) | Civil Action No. 22-10219 |

MOTION FOR DEFAULT JUDGMENT

COMES NOW, Scott Smith ("Smith"), by and through the undersigned counsel, pursuant to Rule 55 of the Federal Rules of Civil Procedure, and hereby respectfully moves this Court to enter a default judgment on Counts I and II of the Complaint against defendant Aphex Biocleanse Systems, Inc. ("Aphex") for its failure to file a responsive pleading and comply with this Court's order. In support of this motion, Plaintiff submits the within Statement of Facts in Support of Damages (Doc. No. 114), affidavit of counsel in support of default judgment (Doc. No. 114-1), and Affidavit of Smith (Doc. No. 114-2). Plaintiff further includes as a chalk, a Summary of Damage Calculations attached as **"Exhibit 1,"** and states the following:

1. On February 10, 2022, Smith filed a complaint against the Defendant, Aphex. *See,* Doc. No. 1.

2. Defendant Aphex failed to file a responsive pleading within the time required by the Federal Rules of Civil Procedure and as extended by court orders.

3. On January 8, 2025, this Court issued an order extending the time for Aphex to retain legal counsel to file a notice of appearance on its behalf, in compliance with Local Rule 83.5.5(c), requiring corporations to be represented by counsel. *See,* Doc. No. 108.

4. Defendant Aphex failed to comply with the Court's order (Doc. No. 108) by failing to retain legal counsel to file a notice of appearance by January 17, 2025, the extended time period.

5.    On February 5, 2025, the Clerk of this Court entered a notice of default against Defendant Aphex for its failure to file a responsive pleading and to comply with the Court's order. *See,* Doc. No. 110 (Clerk's Default).

6.    The Clerk's entry of default against Defendant Aphex satisfies the requirements of Rule 55(a) of the Federal Rules of Civil Procedure.

7.    Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that after an entry of default, the court may enter a default judgment.

DEFAULT JUDGMENT ON COUNT I (Non-Payment of Wages)

8.    The salaried period within which Smith performed work as the CSO and as the CMO was June 2021 through May 2022,[1] and October 2021 through May 2022, respectively. See, Affidavit of Smith in Support of Damages, dated February 28, 2025 ("2nd Aff. Smith"), ¶2 (Doc. No. 114-2).

9.    The CSO position and annual salary of $144,000, plus health benefits and 4-weeks of paid vacation were well-documented, including by signed written agreement. See, Doc. No. 4, p. 2 (Compl. ¶8); See also, Statement of Facts in Support of Damages ("SOF") ¶¶1, 5, 7-11; Doc. No. 114, pp. 1-2.

10.    All accrued, unused vacation constitutes wages under the Wage Act. See, M.G.L. c. 149, § 148.

11.    Smith had not taken or used any of his accrued vacation time. See, Doc. No. 4, p. 3 (Compl. ¶31); Doc. No. 114-2 (2nd Aff. Smith, ¶1).

12.    Unpaid wages for the CSO position totaled $117,000. See, Doc. No. 4, p. 2 (Compl. ¶15);[2] See also, Doc. No. 114-2 (2nd Aff. Smith, ¶¶2-3).

***

13.    "The word "wages" shall include any holiday or vacation payments due an employee under an **oral** or written agreement." (emphasis added). M.G.L. c. 149, s. 148.

---

[1] The month in which the defendant filed for bankruptcy protection. See also, Doc. No. 39 (Suggestion of Bankruptcy).

[2] See, Doc. No. 114 pp. 1-2 (SOF ¶¶1, 5, 7-11).

14. The CMO position and the promise of separate and additional compensation therefor was by oral agreement. See, Doc. No. 4, p. 2 (Compl. ¶10); Doc. No. 114 (SOF ¶2).

15. The fact of the CMO position was further memorialized in a public press release by Aphex. See, Doc. No. 4, p. 7 (Compl. ¶70); Doc. No. 114 (SOF ¶4).

16. A fair and reasonable salary appropriate for the CMO position is $144,000 per year, based on the same salary provided for other Aphex officer positions, i.e., Smith's employment contract as CSO, and further made reasonable and cost-effective for Aphex by deducting any otherwise applicable health benefits and 4-weeks of paid vacation. Doc. No. 4, p. 2 (Compl. ¶¶11-12); Doc. No. 114 (SOF ¶¶1-2).

17. Unpaid wages for the CMO position totaled $96,000. See, Doc. No. 4, p. 2 (Compl. ¶¶10, 16);[3] Doc. No. 114-2 (2nd Aff. Smith, ¶¶2-3).

***

18. Statutory interest rate from date of breach or demand is 12% per annum. G.L. c. 231, § 6C.

19. Prejudgment interest on unpaid CSO wages of $117,000, from June 2021 to March 2025, calculates to $49,140.[4]

20. Prejudgment interest on unpaid CMO wages of $96,000, from June 2021 to March 2025, calculates to $37,440.[5]

---

[3] See, Doc. No. 114 (SOF ¶¶2, 4, 6).

[4] Pre-judgment interest at statutory rate 12% per annum from June 2021. June 2021 to May 2022 (12-month salaried period) calculated from the 6th fiscal month, i.e., November 2021.

| | |
|---|---|
| November 2021: 3% of unpaid balance | $3,510 |
| 2022: 12% of unpaid balance | $14,040 |
| 2023: 12% of unpaid balance | $14,040 |
| 2024: 12% of unpaid balance | $14,040 |
| March 2025: 3% of unpaid balance | $3,510 |
| Total Interest: | $49,140 |

[5] Pre-judgment interest at statutory rate 12% per annum from October 2021. October 2021 to May 2022 (8-month salaried period) calculated from 4th fiscal month, i.e., January 2022.

| | |
|---|---|
| January 2022: 12% of unpaid balance | $11,520 |
| 2023: 12% of unpaid balance | $11,520 |

21.     "The statutory language and purpose of the Wage Act require prompt payment of wages and the trebling of those wages as liquidated damages when they are paid late. The remedy for late payment is therefore not the trebling of interest payments on those wages . . .but the trebling of the late wages." Reuter v. Methuen, 489 Mass. 465, 476 (2022).

DEFAULT JUDGMENT ON COUNT II (Retaliation)

22.     Retaliation under the Wage Act is a separate and independent cause of action from a claim of non-payment of wages and its viability does not depend on the success of the underlying non-payment claim. Smith v. Winter Place LLC, 447 Mass. 363, 364 n.4 (2006).[6]

23.     In or about mid-August or early September of 2021, Smith complained to high level management of Aphex, including, its President, Treasurer, Chairman, and General Counsel, about Aphex's failure to pay him for his salaried positions. See, Doc. No. 4, p. 5 (Compl. ¶¶52-53); Doc. No. 114, p. 3 (SOF ¶¶13-16).

24.     On or about January 5, 2022, Smith filed a complaint with the Massachusetts Attorney General's Office ("AGO") concerning the non-payment of wages by Aphex. See, Doc. No. 4, p. 6 (Compl. ¶60); Doc. No. 114, p. 3 (SOF ¶17).

25.     On February 10, 2022, Smith filed the original complaint in this action petitioning this Court for redress concerning Aphex's non-payment of wages. See, Doc. No. 1.

26.     Aphex retaliated against Smith for complaining about its non-payment of his wages and seeking remediation for the same, both internally and to the AGO. See, Doc. No. 4, pp. 6-9 (Compl. ¶¶61-68; 72-75, 82); Doc. No. 114, pp. 3-5 (SOF ¶¶19-25).

---

| | |
|---|---|
| 2024: 12% of unpaid balance | $11,520 |
| March 2025: 3% of unpaid balance | $2,880 |
| Total Interest: | $37,440 |

[6] "If the underlying non-payment claim failed, the plaintiff must further prove that he reasonably and in good faith believed the employer failed to pay wages in violation of the Wage Act and that the employer's desire to retaliate was a determinative factor in its decision to terminate the plaintiff's employment." Id.

27.     Adverse employment action against Smith included, without limitation, a false and defamatory smear campaign, false and defamatory public press releases in furtherance of same, and wrongful termination of Smith's board seat as a director of Aphex. See, Doc. No. 4, pp. 6-9 (Compl. ¶¶61-68; 72-75, 82); Doc. No. 114, pp. 5-6 (SOF ¶¶26, 30-32).

28.     In its retaliatory actions against Smith, including terminating Smith from the board of directors, Aphex specifically referenced, as reasons therefor, Smith's filing of the present lawsuit in this Court. See, Doc. No. 4, pp. 8-9 (Compl. ¶¶75, 82); Doc. No. 114, pp. 5-6 (SOF ¶¶27-29, 32).

29.     Adverse employment action against Smith further included wrongful termination from his CSO and CMO employment. See, Doc. No. 4, pp. 7, 9 (Compl. ¶¶66, 83); Doc. No. 114, p. 5 (SOF ¶26).

30.     As a direct result of Aphex's retaliatory actions against Smith, Smith suffered reputational damage, humiliation, embarrassment and undue burden and delays that further interfered with his ability to earn income and build his personal and professional brand. Doc. No. 114-2, pp. 1-2 (2nd Aff. Smith, ¶¶4-8).

31.     Following Aphex's retaliatory termination of Smith, Smith made good faith and diligent efforts to mitigate his loss of income and opportunity damages, and was successful in obtaining a salaried employment as CSO of another company with actual income earnings of $60,000 in 2022 and $60,000 in 2023. Id. at 2 (2nd Aff. Smith, ¶9).

        WHEREFORE, Plaintiff Scott Smith respectfully requests that this Court:

A.      Enter a default judgment against Defendant, Aphex Biocleanse Systems, Inc. on Counts I and II of the First Amended Complaint;

B.      Award damages based on $117,000 for non-payment of wages relating to the CSO position, trebled to $351,000 as provided by statute. M.G.L. ch. 149, §§ 148, 150;

C.      Award 33 months of back pay damages of $276,000 for retaliatory employment termination from date of termination to date of judgment (adjusted for the $120,000 mitigation income earned by Smith) related to the CSO position, trebled to $828,000 as provided by statute. Mass. Gen. Laws ch. 149, §§ 148A, 150;

D.      Award damages based on $96,000 for non-payment of wages relating to the CMO position, trebled to $288,000 as provided by statute. M.G.L. ch. 149, §§ 148, 150;

E.      Award 33 months of back pay damages of for retaliatory employment termination from date of termination to date of judgment amounting to $396,000 related to the CMO position, trebled to $1,188,000 as provided by statute. Mass. Gen. Laws ch. 149, §§ 148A, 150;

F.      Award prejudgment interest on non-payment and back pay under Counts I and II of $49,140 and $45,540, respectively, relating to the CSO position;

G.      Award prejudgment interest on non-payment and back pay under Counts I and II of $37,440 and $65,340, respectively, relating to the CMO position;

H.      Award costs to the plaintiff in the amount of $629.50;

I.      Award plaintiff reasonable attorney's fees incurred in bringing this action;

J.      Order Aphex to issue a press release for the purpose of mitigating reputational damage to the plaintiff, retracting its previous press releases concerning suspension and termination of the plaintiff, Scott C. Smith, and correcting the public record with reference to this case and the decision of this Court, said retraction and correction statement to be approved by the plaintiff prior to publishing, and if the parties cannot agree on the wording of the retraction and correction statement, they may submit their proposed versions to this Court for final determination;

K.      Order Aphex to disseminate the approved retraction and correction statement to all shareholders and employees of Aphex, both past and present; and

L.      Grant such other and further relief as this Court deems just and proper.

Date:  March 2, 2025

Respectfully submitted,
Scott Smith, plaintiff
By his attorney,
/s/Brian J. Wasser
Brian J. Wasser, BBO #633621
RealtyEsquire, PC
P.O. Box 151
W. Hyannisport, MA 02672
(508) 862-9999
lawclaims@msn.com

<u>Certificate of Service</u>

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non registered participants on March 2, 2025.