UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT SMITH, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Action No. 1:22-cv-10219-IT |
| | * |
| APHEX BIOCLEANSE SYSTEMS, INC., | * |
| and DAVID OLUND, | * |
| | * |
| Defendants. | * |

MEMORANDUM & ORDER

March 10, 2026

TALWANI, D.J.

In his Amended Complaint [Doc. No. 4], Plaintiff Scott Smith claims, inter alia, that Defendants Aphex BioCleanse Systems, Inc. ("Aphex") and David Olund, as President of Aphex, violated the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, §§ 148, 148A, 150 (the "statutory claims") by failing to pay Smith wages and benefits due to him and by retaliating against Smith for filing a complaint of nonpayment with the Massachusetts Attorney General's Office and initiating this action. Am. Compl. ¶¶ 41–84 [Doc. No. 4].

Now before the court are Plaintiff's Motion for Partial Summary Judgment [Doc. No. 67] and Motion for Default Judgment [Doc. No. 115] seeking, as to the statutory claims, summary judgment on liability against Olund, and a default judgment as to Aphex.[1] For the following reasons, Plaintiff's Motions [Doc. Nos. 67, 115] are DENIED.

---

[1] Plaintiff's additional claims against Olund and Aphex for quantum meruit (Count IV) and promissory estoppel (Count V), and against Aphex for breach of contract (Count III), see Am. Compl. ¶¶ 85–103, are not at issue in the pending motions.

I.  **Procedural History**

On January 5, 2022, Smith filed a complaint with the Massachusetts Attorney General's Office alleging Wage Act violations by Aphex. First Suppl. Authorities and Other Post-Hearing Notices, Ex. C ("2022 Wage Complaint") [Doc. No. 103-3]. Smith listed the total amount owed as $40,000, based on his salary of $12,000 per month as Aphex's Chief Sustainability Officer ("CSO"). Id. On January 10, 2022, Smith received a right to sue letter as to Aphex from the Massachusetts Attorney General's office. Am. Compl., Ex. 1 ("Right-to-Sue Letter") [Doc. No. 4-1].

In February 2022, Plaintiff Smith filed a Complaint [Doc. No. 1] and then a superseding Amended Complaint [Doc. No. 4] against Aphex, Olund, and Charles Ragland. Plaintiff alleged that he was a Massachusetts resident, Aphex was a Nevada corporation with a principal place of business in New York, and Defendants Olund and Ragland were residents of Florida. Am. Comp. ¶¶ 1–4. Plaintiff claimed unpaid wages based on the CSO position (with an alleged monthly salary of $14,634) plus vacation and benefits, additional unpaid wages as Chief Marketing Officer ("CMO"), and wages of another $5,000 per month as a member of Aphex's Board of Directors. Id. ¶¶ 8–14.

Olund and Ragland appeared *pro se* and moved to dismiss the action for lack of personal jurisdiction, lack of subject matter jurisdiction, and improper venue. Olund's Mot. to Dismiss [Doc. No. 8]; Ragland's Mot. to Dismiss [Doc. No. 10]. On May 12, 2022, before responding to the Amended Complaint, Aphex sought protection from the bankruptcy court, resulting after further filings in a stay of the litigation. See e.g., Suggestion of Bankruptcy [Doc. No. 39]; Notice of Fraud on the Court [Doc. No. 40]; Bankruptcy Trustee's Letter to the Court [Doc. No. 47]; Notice [Doc. No. 49]; Elec. Order Staying Case [Doc. No. 51].

Following entry of the Bankruptcy Court's Order Granting Motion for Relief from Stay [Doc. No. 58-1], the court lifted the stay as to Olund and Ragland, see Elec. Order [Doc. No. 59]. The court granted Ragland's Motion to Dismiss [Doc. No. 10] for lack of personal jurisdiction. Mem. & Order [Doc. No. 61]. The court denied Olund's Motion to Dismiss [Doc. No. 8], finding personal jurisdiction, venue, and subject matter jurisdiction over the dispute. Mem. & Order [Doc. No. 61].

Prior to the commencement of discovery, Plaintiff filed his pending Motion for Partial Summary Judgment [Doc. No. 67], seeking judgment as to liability on the statutory claims against Olund. Olund filed papers in opposition, see Def.'s Decl. ISO Opp'n [Doc. No. 87],[2] but did not appear at the motion hearing.

On November 2, 2024, following that hearing, Plaintiff filed a Second Wage Complaint [Doc. No. 103-1] with the Massachusetts Attorney General's Office, this time also naming Olund as President of Aphex. This Second Wage Complaint asserted that Plaintiff was employed by Aphex through May 12, 2022, and sustained $200,000 in lost wages, and added a retaliation claim.

After Aphex's bankruptcy petition was dismissed, the clerk entered Aphex's default, see Clerk's Entry of Default [Doc. No. 110], and Plaintiff filed his Motion for Default Judgment [Doc. No. 115] as to Aphex on the two statutory claims. Plaintiff seeks a default judgment in the amount of $2,655,000, plus pre- and post-judgment interest and costs.

---

[2] The court addressed Plaintiff's challenge to these filings in a Memorandum and Order [Doc. No. 118] granting in part and denying in part Plaintiff's Motion to Strike [Doc. No. 88].

3

**II.     Standard of Review**

   *A. Summary Judgment*

Under Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Baker v. St. Paul Travelers, Inc., 670 F.3d 119, 125 (1st Cir. 2012). A dispute is genuine if a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where "the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial." Winnacunnet Co-op. School Dist. v. National Union Fire Ins. Co. of Pittsburgh, 84 F.3d 32, 35 (1st Cir. 1996) (quoting Celotex, 477 at 331 (Brennan, J., dissenting on other grounds)).

Once the moving party establishes the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to set forth facts demonstrating that a genuine dispute of material fact remains. Id. at 324. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of [the] pleadings." Anderson, 477 U.S. at 256. Rather, the non-moving party must "go beyond the pleadings and by [his or] her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S.

4

at 324 (quoting Fed. R. Civ. P. 56(e)). Disputes over facts "that are irrelevant or unnecessary" will not preclude summary judgment. Anderson, 477 U.S. at 248.

When reviewing a motion for summary judgment, the court must take all properly supported evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment[.]" Anderson, 477 U.S. at 255.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including . . . affidavits or declarations . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

B. *Default Judgment*

Fed. R. Civ. P. 55 provides a two-step process for default judgment. Fed. R. Civ. P. 55(a)–(b). Under Rule 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Under Rule 55(b), if the default is not for a sum certain, an application or motion for default judgment must be made directly to the court. Fed. R. Civ. P. 55(b)

A defaulted party is deemed "to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated." Universitas Educ., LLC v. Granderson, 98 F.4th 357, 377 (1st Cir. 2024) (quoting Franco v.

Selective Ins. Co., 184 F.3d 4, 9 n.3 (1st Cir. 1999)). "Notwithstanding that concession, the district court 'may examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action.'" Id. (quoting Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002) (citation omitted)). The court must ascertain that it "'has jurisdiction over the subject matter and parties, the allegations in the complaint state a specific, cognizable claim for relief, and the defaulted party had fair notice of its opportunity to object.'" Id. (quoting In re The Home Rests., Inc., 285 F.3d 111, 114 (1st Cir. 2002) (citations omitted)). The court may also "choose to hold a hearing to establish the truth of any averment in the complaint." In re The Home Rests., Inc., 285 F.3d at 114–15 (citation and internal quotation marks omitted).

## III. Discussion

### A. Choice of Law

Plaintiff's claims at issue in the pending motions are for violation of Massachusetts statutes. The court begins with the threshold question of whether Massachusetts law applies to the parties' dispute. Because this is a diversity action, the court applies the choice-of-law principles of the forum state to determine the applicable substantive law. Viscito v. National Planning Corp., 34 F.4th 78, 83 (1st Cir. 2022).

When "the parties have expressed a specific intent as to the governing law, Massachusetts courts will uphold the parties' choice as long as the result is not contrary to public policy." Dahua Technology USA Inc. v. Zhang, 988 F.3d 531, 537 (1st Cir. 2021) (citations omitted). Here, Plaintiff's employment contract with Aphex states that "[t]his Agreement shall be governed by and interpreted under the laws of the United States of America." Statement of Undisputed Material Facts, Ex. 1 ¶ 14 ("CSO Employment Agreement") [Doc. No. 68-2]. While the parties have thus agreed that federal law governs the interpretation of the agreement, the

6

clause does not indicate any agreement by the parties as to their choice of law as to non-contract claims.

In the absence of an agreement as to the choice of law, "Massachusetts follows a functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole." Viscito, 34 F.4th at 83 (citations omitted). "Under the functional approach, the forum applies the substantive law of the state which has the more significant relationship to the transaction in litigation." Id. (citations omitted). And where a Massachusetts statute "is silent as to its extraterritorial effect," Massachusetts courts "rely on [the state's] 'functional' choice-of-law principles in assessing the applicability of the statute to the plaintiffs' claims." Taylor v. E. Connection Operating, Inc., 465 Mass. 191, 198, 988 N.E.2d 408, 414 (2013).

The Massachusetts Wage Act does not expressly foreclose extraterritorial application. Dow v. Casale, 83 Mass. App. Ct. 751, 752, 989 N.E.2d 909, 913 (2013) (noting that the Massachusetts Wage Act "does not, in terms, restrict its remedies to employees who live or work in Massachusetts"). As a result, the statute affords protections even to out-of-state employees—so long as Massachusetts has the most significant relationship to the plaintiff's employment. See Viscito, 34 F.4th at 83; Curtin-Wilding v. Trustees of Boston Univ., 2025 WL 1489978, at *2 (D. Mass. May 23, 2025); Dow, 83 Mass. App. Ct. at 754–58, 989 N.E.2d at 912–15.

The First Circuit has explained that whether Massachusetts has the most significant relationship to a worker's claim for unpaid compensation depends on a variety of considerations, including "the state where the employer's headquarters is located, the place(s) the worker performed the work, the frequency of interactions between the worker and the employer in Massachusetts, whether another state has a significant connection to the worker and work

7

performance, and whether the contract between the worker and employer has a choice-of-law provision[.]" Viscito, 34 F.4th at 85–86 (citing Dow, 83 Mass. App. Ct. at 757–58, 989 N.E.2d at 914).

Here, Plaintiff makes no showing in the pending motions as to Massachusetts' relationship with his claim for unpaid compensation. See Pl.'s Mem. ISO Mot. for Partial Summ. J. [Doc. No. 69]; Pl.' s Mot. for Default J. [Doc. No. 115]. Without that showing, the court cannot apply the Wage Act to this dispute.

    *B. Failure to Pay Wages*

If Plaintiff can demonstrate on a renewed motion that Massachusetts law applies, the court anticipates that he will be able to show Aphex and Olund's liability as to the wage claim, but only as to unpaid wages based on Plaintiff's position as CSO through December 2021. See infra Section III.B.1 (citing Statement of Undisputed Material Facts, Ex. 30 ¶ 8 ("Smith Aff.") [Doc. No. 68-31]; Def.'s Statement of Material Facts in Dispute ¶ 10 [Doc. No. 87-3]).

    1. Liability

"The purpose of the Wage Act is 'to prevent the unreasonable detention of wages.'" Dow, 83 Mass. App. Ct. at 751, 754 , 989 N.E.2d at 912 (quoting Melia v. Zenhire, Inc., 462 Mass. 164, 170, 967 N.E.2d 580, 587 (2012)). "Section 148 of the Wage Act provides, in pertinent part: 'Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him . . . ." Id. (quoting Mass. Gen. Laws ch. 149, § 148). The Wage Act makes liable "[e]very person having employees in his service," which, under the statute, includes "[t]he president and treasurer of a corporation and any officers or agents having the management of such corporation . . . ." Mass. Gen. Laws ch. 149, § 148; Segal v. Genitrix, LLC, 478 Mass. 551, 558, 87 N.E.3d 560, 567 (2017). Such persons are strictly liable for

violating the statute. See Knous v. Broadbridge Financial Solutions, Inc., 991 F.3d 344, 345 (1st Cir. 2021) ("The [Wage] Act imposes strict liability on employers who fail to comply with its requirements . . . .") (citing Lawless v. Steward Health Care System, LLC, 894 F.3d 9, 21 (1st Cir. 2018)); Dixon v. City of Malden, 464 Mass. 446, 453, 984 N.E.2d 261, 265 (2013) ("Employers must 'suffer the consequences' of violating the statute regardless of intent.") (quoting Somers v. Converged Access, Inc., 454 Mass. 582, 592, 911 N.E.2d 739, 749 (2009)).[3]

Plaintiff's claim for unpaid wages is supported by following undisputed facts. First, on June 1, 2021, Aphex agreed to pay Plaintiff a $144,000 annual salary. See CSO Employment Agreement ¶ 3 [Doc. No. 68-2] (stating that Aphex was employing Smith as its Chief Sustainability Officer ("CSO") "at an annual salary of $144,000 (such salary referred to herein as the 'Base Salary'), payable periodically in accordance with [Aphex's] practice (net of applicable deductions and required withholdings)."). Second, Smith commenced his employment on June 1, 2021, see Smith Aff. ¶ 8 [Doc. No. 68-31], but received only $54,000 (equivalent to four-and-a-half months, or the period from June 1, 2021, through October 15, 2021) of his CSO base salary. See Def.'s Statement of Material Facts in Dispute ¶ 10 [Doc. No. 87-3]; Statement of Undisputed Material Facts, Ex. 4, at 2 ("W-2 for 2021") [Doc. No. 68-5]. During the two-and-half month period from October through December 2021 period when Plaintiff was not paid, Olund was the President of Aphex. See Def.'s Statement of Material Facts in Dispute ¶ 2 [Doc. No. 87-3] (stating that Olund was "not appointed President until late in the 3rd Quarter of 2021."); see also Statement of Undisputed Material Facts, Ex. 2, last updated December 11, 2021 at 3 ("Nevada Corporate Filing") [Doc. No. 68-3] (identifying Olund as Aphex's President).

---

[3] Because the statute, if it applies, imposes strict liability, Olund's argument that any withholding of payment was not "willful" is immaterial. See Decl. ISO Opp'n at 1 [Doc. No. 87].

The Wage Act covers wages "earned" by an employee. Mass. Gen. Laws ch. 149, § 148. The Massachusetts Supreme Judicial Court has interpreted "earned" to mean that an employee "has completed the labor, service, or performance required of him . . . " and has "do[ne] something that entitles one to a reward or result, whether it is received or not . . . ." Awuah v. Coverall N.A., Inc., 460 Mass. 484, 492, 952 N.E.2d 890, 896 (2011) (quoting Black's Law Dictionary 584 (9th ed. 2009)). See also Calixto v. Coughlin, 481 Mass. 157, 161, 113 N.E.3d 329, 333 (2018) ("the right to payment of 'earned' wages is secured by virtue of work or service actually performed") (quoting Massachusetts State Police Commissioned Officers Ass'n v. Commonwealth, 462 Mass. 219, 226, 967 N.E.2d 626, 632 (2012)).

Plaintiff claims that he performed work for Aphex during this period, see Smith Aff. ¶ 8 [Doc. No. 68-31], and Olund raises no dispute as to the period through December 31, 2021. See Def.'s Statement of Material Facts in Dispute ¶ 10 [Doc. No. 87-3] (arguing that "[a]s of January 1, 2022, Smith was no longer performing any tasks beneficial to" Aphex). Consistent with Plaintiff's claim that he was performing work for Aphex during this period, on December 20, 2021, Ragland wrote to Smith and others, indicating that "funds from the sale of the bottling line" would be used in part to reimburse Smith $22,131.52 for out-of-pocket expenses through November 30, 2021. See Statement of Undisputed Material Facts, Ex. 9, at 1–2 ("December 20, 2021 Email") [Doc. No. 68-10].

Olund argues that the CSO Employment Agreement [Doc. No. 68-2] is void because of its provision stating that "[t]his Agreement shall be governed by and interpreted under the laws of the United States of America." Id. ¶ 14; see Def.'s Statement of Material Facts in Dispute ¶¶ 1, 2, 4, 8, 9, 17, 18, 26, 30 [Doc. No. 87-3]. But Olund cites no authority holding a contract invalid because the parties agreed it would be governed and interpreted under the laws of the

United States. Nor is the provision nonsensical. The agreement provides, for example, that Plaintiff's salary would be paid "net of applicable deductions and required withholdings[,]" CSO Employment Agreement ¶ 3 [Doc. No. 68-2], which deductions and withholdings would be determined, at least in part, by federal laws regarding income tax and social security withholdings.

2. Damages

Plaintiff has demonstrated that he is owed $12,000 per month under the CSO contract for the period from mid-October through December 2021. His additional claims for lost wages and benefits are not supported by the record.

First, Plaintiff contends that he was due health insurance because his contract stated that he was "entitled to participate in all benefit and pension programs offered . . . to senior employees at the level of the Executive." CSO Employment Agreement ¶ 5 [Doc. No. 68-2]. He points to a line in a spreadsheet sent by Ragland on December 20, 2021, for "health insurance" in the amount of $4,742.88, to claim that he was due health insurance. December 20, 2021 Email, at ECF 2 [Doc. No. 68-10]. Olund maintains that, by the summer of 2021, no one at Aphex was receiving health insurance through the company. See Def.'s Statement of Material Facts in Dispute ¶ 12 [Doc. No. 87-3]. On this record, the court is unable to find that health insurance was offered to senior employees at the level of executive and that Plaintiff sought to participate in any such program.

Second, Plaintiff claims double salary based on an additional position as Chief Marketing Officer beginning in October 2021. See Smith Aff. ¶¶ 4, 9 [Doc. No. 68-31]; Am. Compl. ¶¶ 11–12 [Doc. No. 4]. While Aphex did announce that Plaintiff would assume that position in October 2022, see Pl.'s Statement of Material Facts ¶ 7 [Doc. No. 68], Plaintiff has not established any

11

agreement as to the amount of any increased pay. Olund's assurance that Plaintiff would receive a salary "appropriate for such a position," see Smith Aff. ¶ 4 [Doc. No. 68-31], does not establish a wage rate where no specific amount was ever agreed upon. Moreover, the CSO Employment Agreement [Doc. No. 68-2] provided that any change needed to be in writing and the parties never signed a new or amended agreement. See Def.'s Statement of Material Facts in Dispute ¶¶ 4, 7 [Doc. No. 87-3].

Third, Plaintiff claims that he was due $5,000 a month as a Board Member, starting in October 2021. See Smith Aff. ¶¶ 5–6 [Doc. No. 68-31]. But Plaintiff offers no evidence to support his assertion that the Board position was compensated and no legal support for the claim that a Board Member stipend is treated as compensation under the Wage Act. At this court's instruction, Plaintiff filed supplemental briefing on the question of whether the Wage Act applies to compensation for board members. See Pl.'s Second Suppl. Authorities and Other Post-Hearing Notices at 2 [Doc. No. 104]. Although Plaintiff maintains that "[c]ase law indicates that board of director compensation is subject to regulation under the Wage Act the same as any role or position," id. at 3, none of the cases on which Plaintiff relies speak to the question of whether board members are "employees" under the Wage Act.[4] Because Plaintiff has not established his entitlement to wage payments as a member of the board, Plaintiff is not entitled to summary judgment as to his Wage Act claim vis-à-vis his board position.

---

[4] See Jancey v. Sch. Comm., 421 Mass. 482, 658 N.E.2d 162 (1995) (involving cafeteria workers); Mui v. Mass. Port Auth., 478 Mass. 710, 89 N.E.3d 460 (2018) (involving Port Authority employee); O'Connor v. Kadrmas, 96 Mass. App. Ct. 273, 135 N.E.3d 226 (2019) (involving executives of an ophthalmology practice); City of Cambridge v. Cambridge Police Patrol Officers Ass'n, 58 Mass. App. Ct. 522, 791 N.E.2d 355 (2003) (involving police cadets).

Notably, none of these additional amounts were included in the Wage Complaint filed by Plaintiff in January 2022, which made no claim for delinquent pay for the CMO position, the Board Member position, or for the failure to pay health insurance. See 2022 Wage Complaint [Doc. No. 103-3].

Finally, Plaintiff claims lost wages up until Aphex's bankruptcy filing on May 12, 2022. Plaintiff asserts that "[t]he salaried period within which [he] performed work as the CSO and as the CMO was June 2021 through May 2022, and October 2021 through May 2022, respectively." See Statement of Facts ISO Damages, Ex. 2 ¶ 2 ("Smith Aff. ISO Damages") [Doc. No. 114-2]; see also Smith Aff. ¶¶ 8, 9 [Doc. No. 68-31] (asserting "[s]ince Jun 1, 2021, [he] had been employed and performed work as the CSO of Aphex" and "since June 1, 2021, [he] had been employed and performed work as the CMO and as a Director of Aphex"). But where Olund has not conceded that Plaintiff performed work for Aphex after December 31, 2021, and Plaintiff provides no details as to when the work was performed, Plaintiff's general statements are insufficient to establish that he performed "the labor, service, or performance required of him," see Awuah, 460 Mass. at 492, 952 N.E.2d at 986, to earn wages for purposes of the Wage Act for any period after December 31, 2021.

*C. Retaliation*

If Plaintiff demonstrates in a renewed motion that Massachusetts law applies, the issue of whether Aphex and Olund retaliated against Plaintiff also cannot be resolved on the present record.

"To ensure that the requirements of the Wage Act are met, the statute prohibits employers from retaliating against employees who assert their rights." Parker v. EnerNOC, Inc., 484 Mass. 128, 133, 139 N.E.3d 328, 333 (2020); Mass. Gen. Laws ch. 149, § 148A ("[N]o employee shall

13

be penalized by an employer in any way as a result of any action on the part of an employee to seek his or her rights under the wages and hours provisions of this chapter."). To prevail on a retaliation claim, a plaintiff must show: (1) that he engaged in conduct protected by the Wage Act; (2) that his employer subjected him to an adverse employment action; and (3) that the employer's adverse action was because of the employee's protected conduct. See Travers v. Flight Servs. & Sys., Inc., 808 F.3d 525, 531 (1st Cir. 2015). In the retaliation context, action taken by an employer is adverse if it "could well dissuade a reasonable worker from making or supporting a charge[.]" Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006) (Title VII employment retaliation case).

If there is no direct evidence of a retaliatory animus, on summary judgment, "[r]etaliation claims [under Mass. Gen. Laws ch. 149 § 148A] proceed under the burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Halsten v. Prompt Praxis Lab'ys, LLC, 2024 WL 1585850, at *3 (D. Mass. Apr. 11, 2024); Mogilevsky v. Wellbridge Club Management, Inc., 905 F. Supp. 2d 405, 412 (D. Mass. 2012) (applying McDonnell Douglas framework to case involving § 148A retaliation claim). Under that framework, a plaintiff must first establish a prima facie case of retaliation by showing that the plaintiff "undertook protected conduct," that defendants "took a material adverse action against [the plaintiff]," and that "a causal nexus exists between elements one and two." Halsten, 2024 WL 1585850, at *3 (citations omitted). If the plaintiff establishes a prima facie case, the burden shifts to the defendants "to articulate a legitimate, non-retaliatory explanation for their actions." Id. (citing Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 175 (1st Cir. 2015)). If the defendants do so, the burden shifts back to the plaintiff to show that their proffered explanation is pretextual. Id.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e).

Plaintiff points to a press release issued by Aphex after Plaintiff filed suit against the company as direct evidence of Defendants' retaliatory motive. See Statement of Undisputed Material Facts, Ex. 15, at 2 ("February 18, 2022 Press Release") [Doc. No. 68-16]. That press release stated that Smith, who served on Aphex's board of directors, had breached his fiduciary responsibility to shareholders by filing suit against Aphex and its Directors and Officers for his own individual financial benefit, and that he was being suspended from his duties as a board member. See id. The press release satisfies the McDonnell Douglas standard for a prima facie case but is not itself direct evidence as to an unlawful retaliatory motive. See Mesnick v. Gen. Elec. Co., 950 F.2d 816, 828–29 (1st Cir. 1991).

Plaintiff also maintains that other actions by Aphex employees were retaliatory. According to Plaintiff, Aphex employees, including Olund, waged a campaign to defame or discredit Plaintiff in the eyes of other executives and key employees of Aphex, Aphex business partners, and Aphex investors and shareholders. See Pl.'s Statement of Undisputed Material Facts ¶ 28 [Doc. No. 68]. Plaintiff further states that the campaign included an allegedly pretextual investigation into Plaintiff, his other intellectual property ("IP"), and his other company; as well as false accusations that Plaintiff was a bad actor, that he had falsely represented himself as the owner of certain IP, and that Plaintiff had destroyed other companies

15

in the past. See id. ¶¶ 24, 36, 37. Plaintiff further alleges that Chairman Fitzgerald refused to respond to his correspondence, and that company employees devised the "frivolous story" that there was no valid employment contract in place because of Plaintiff's complaints of unpaid wages. See id. ¶ 30. Finally, as previously noted, Plaintiff alleges that Aphex engaged in retaliation by suspending him from the Board in February 2022. See id. ¶ 31. This evidence also supports a prima facie case of retaliation. See Halsten, 2024 WL 1585850, at *3.

Accordingly, the burden shifts to Defendants to articulate a non-retaliatory basis for the adverse actions taken against Plaintiff. See id. Olund's account, which he alleges most clearly in his Answer [Doc. No. 86], is that Aphex employees discovered that Plaintiff had misrepresented his ownership of certain IP that he had promised to convey to Aphex, see id. ¶ 10, that Plaintiff had ignored the Aphex Chairman's request for information about this IP, see id., that Plaintiff contacted company shareholders and imparted false information to them after the Chairman's inquiry, see id. ¶ 12, that Aphex employees discovered a Slate Magazine article exposing Plaintiff as a "con man," id. ¶ 14, and, finally, that Plaintiff waged an unsuccessful takeover attempt of Aphex that led to his permanent termination from the Board of Directors, see id. ¶ 8. Most of Olund's claims, however, were not properly supported by the summary judgment record. See Mem. and Order [Doc. No. 118] (granting in part and denying in part Plaintiff's Motion to Strike [Doc. No. 88]).

Assuming Olund is able on a renewed motion to properly support his opposition, Plaintiff would be required to demonstrate that these arguments are pretextual. See Mesnick, 950 F.2d at 828–29. For such a showing, the court anticipates that Plaintiff would need more complete evidence to rebut Olund's contention that a dispute over intellectual property, rather than the wage claim, was the reason for the alleged adverse actions against Plaintiff. See id.

16

Notable facts are missing from the summary judgment record. It appears that after the announcement of the CMO position in October 2021, the parties were not only negotiating a new employment agreement but also a new IP agreement and that negotiations over a transfer of IP failed. <u>See</u>, <u>e.g.</u>, Statement of Undisputed Material Facts, Ex. 7 [Doc. No. 68-8] (referencing "two agreements" and agreement for "Assignment of IP"); Statement of Undisputed Material Facts, Ex. 10 [Doc. No. 68-11] (referencing Plaintiff's email to Brian Wasser as legal counsel for Plaintiff, AquaFlex Holdings LLC and US BioSolutions LLC "listing items that will need to be resolved for [Plaintiff] to continue with Aphex"); Statement of Undisputed Material Facts, Ex. 11, at ECF 5 [Doc. No. 68-12] (referencing correspondence relating to draft agreements with Plaintiff and inquiring as to Plaintiff's IP); Statement of Undisputed Material Facts, Ex. 11, at ECF 4 [Doc. No. 68-12] (apologizing for not responding sooner to an email, referencing an email from December 23, 2021, a "pre-holiday phone conference," and Aquaflex not transferring IP to Aphex, and asserting that "there's no need for any due diligence related thereto[.]"). Without clarity as to this additional dispute, Plaintiff is unable to establish pretext on summary judgment.

## IV.    Conclusion

For the foregoing reasons, Plaintiff's <u>Motion for Partial Summary Judgment</u> [Doc. No. 67] and <u>Motion for Default Judgment</u> [Doc. No. 115] are DENIED.

IT IS SO ORDERED.

March 10, 2026                             /s/ Indira Talwani
                                                     United States District Judge